# UNITED STATES DISTRICT COURT
## IN AND FOR THE SOUTHERN DISTRICT OF IOWA

| | | |
|---|---|---|
| IN RE THE MATTER OF SEVERAL | ) | MISC. NO. 3:09-MC-0001-JAJ |
| BANK ACCOUNTS AND | ) | |
| CERTIFICATES AT VARIOUS | ) | |
| FINANCIAL INSTITUTIONS | ) | |
| RELATING | ) | |
| TO WORLDWIDE SOFTWARE | ) | **REPORT AND RECOMMENDATION** |
| SERVICES, SANA SYSTEMS, NEW | ) | |
| AGE TECHNOLOGY, | ) | |
| FAZAL MEHMOOD AND | ) | |
| VINEET MAHESHWARI, AND | ) | |
| OTHERS | | |

This Report and Recommendation is prepared in accordance with the order of February 23, 2009 (Clerk's No. 3), filed by District Judge John A. Jarvey pursuant to 28 U.S.C. § 636(b)(1)(B) regarding the extension of a Temporary Restraining Order (TRO) issued by Judge Jarvey on February 17, 2009 (Clerk's No. 2).  Hearing was scheduled for February 24, 2009 on that extension.

Pursuant to Judge Jarvey's orders, this magistrate judge has conducted hearings on the issue of the extension of the TRO on February 24, 2009 (see Minute Entry at Clerk's No. 6); on February 27, 2009 (see Minute Entry, Clerk's No. 10); on March 6, 2009 (see Minute Entry, Clerk's No. 22); and on March 9, 2009 (see Minute Entry, Clerk's No. 23).

In the interim, this magistrate judge, without objection by any of the parties, extended the TRO, first to and including March 6, 2009 (Clerk's No. 7), and then to and including March 13, 2009 (Clerk's No. 21).  An additional extension sua sponte was filed March 13, 2009 (Clerk's No. 25).

## BACKGROUND OF THE CASE

This matter is necessarily intertwined with two pending criminal cases:   United States of America v. Fazal Mehmood a/k/a Fazal Awan, Case No. 3:09-CR-24[1] and United States of America v. Vineet Maheshwari, Case No. 3:09-CR-25.[2]   Mehmood and Maheshwari were arrested on February 11, 2009 pursuant to warrants issued upon criminal complaints filed against each of them in their respective cases.   Initial appearances for both defendants were held on February 11, 2009, at which time they were ordered held temporarily in the custody of the United States Marshal pending a detention hearing and preliminary hearing, both of which were scheduled for defendants on February 13, 2009.

On February 13, 2009, defendants appeared in person, and with their respective attorneys.   At that time, both defendants waived their right to a detention hearing pursuant to 18 United States Code § 3142, and both defendants also waived their respective rights to a preliminary hearing on the criminal complaints pursuant to Fed. R. Cr. P. 5 and 5.1.   As a result of the waivers of detention hearings, the Court ordered both Mehmood and Maheshwari detained.   It should be noted that the waivers of the detention hearings occurred in the face of detainers filed against each defendant by the Immigrations and Customs Enforcement (ICE) Division of the Department of Homeland Security.

Upon the separate waivers of the preliminary hearings by Mehmood and Maheshwari, the Court, pursuant to Rule 5 and Rule 5.1, found that there was probable cause for the filing of the

---

[1]At the time of the entry of the Temporary Restraining Order and hearings on the issue of restraint of property, Defendant Mehmood was charged in a Criminal Complaint, Case No. 3:09-MJ-12.  The indictment against him was filed March 12, 2009.

[2]At the time of the entry of the Temporary Restraining Order and hearings on the issue of restraint of property, Defendant Maheshwari was charged in a Criminal Complaint, Case No. 3:09-MJ-13.   The indictment against him was filed March 12, 2009.

criminal complaint in each of the cases, and the arrest upon warrants of Mehmood and Maheshwari.

It was subsequent to the arrest and detention of Mehmood and Maheshwari that the government presented its Ex Parte Application for Preindictment Temporary Restraining Order With Supporting Suggestions to Judge Jarvey on February 17, 2009, in this case.

<u>UNDERLYING ALLEGATIONS</u>

The indictment filed against Mehmood alleges, *inter alia*, that he knowingly misused a social security number in violation of 42 U.S.C. § 408(a)(7) (Count 1); and that he falsely made a record in relation to the registry of aliens in violation of 18 U.S.C. § 1426 (Count 2).

The charges brought by indictment against Maheshwari allege that he violated 18 U.S.C. § 1546 by knowingly and falsely making a document prescribed by statute or regulation as evidence of authorized stay or employment and knowingly gave under oath a false statement in an application and document required by immigration laws.

The allegations against Mehmood regarding misuse of a social security number center on the fact that he allegedly applied for two social security numbers using first the name of Fazal Mehmood, and then the name of Fazal Awan.   In both applications he gave identical identifying information.   Mehmood/Awan then allegedly utilized the two separate social security numbers to facilitate obtaining driver's licenses, opening bank accounts, and making employment declarations.

It is alleged in regard to the immigration document charges that Mehmood/Awan utilized the different social security numbers to identify himself first as an employee of Worldwide Software Services, Inc. (WWSS), and as Fazal Awan it is alleged he used that social security number to identify himself as a director of Sana Systems, Inc., and of which he also was identified as the "President."

It is further alleged that Mehmood/Awan utilized these corporate entities to support applications for immigration documents to be filed on behalf of foreign workers pursuant to the H-1B Immigrant Employment Program.  All the foregoing allegations regarding Mehmood/Awan are taken from the affidavit attached to the criminal complaint, and executed by FBI Special Agent Elizabeth Baren on February 10, 2009.   The specific allegations against Maheshwari, as set forth in an affidavit also executed by Special Agent Baren, and attached to the criminal complaint against him, state that notwithstanding his entry into the United States in 1993 for purposes of education, that beginning in September 1996, Maheshwari was listed an employee of Sana Systems, Inc., Clinton, Iowa, and later he was listed as the registered agent for WWSS, also located in Clinton, Iowa.  Later, in 1999, Maheshwari allegedly, upon the petition of Network Resource Group, Inc., Springfield, Illinois, obtained a H-1B Specialty Worker Status valid through April 30, 2002.

SA Baren also executed a detailed affidavit on February 13, 2009, which was attached to the Ex Parte Application for Preindictment Temporary Restraining Order in this case. In that affidavit, the government alleges that WWSS listed both Awan and Maheshwari as its president at different times, and that that corporation recruited foreign workers for placement within the H-1B program in the United States.   Further, that affidavit details the application by Mehmood/Awan for separate social security numbers, and his work between September 1996 and July 1999 for Applied Computer Technology, Inc. pursuant to the H-1B program.  Described in the affidavit is an application submitted on behalf of Mehmood by Network Resource Group in 1997, listing Mehmood as an employee between April of 1999 and December of 2001.   Also identified in the affidavit are Mehmood's earnings records through the Social Security Administration for the years 1989 through 2007.

That affidavit also provides information regarding Maheshwari, indicating that he was first listed as an employee of Sana Systems in 1996 pursuant to the H-1B program. State of Iowa records, according to the affidavit, list Maheshwari as an employee of Sana Systems from 1998 through the second quarter of 2006. However, at the same time he was listed as Manager and then Vice President of Sana Systems while Awan was listed as the owner of the corporation.

Allegations are also raised in this affidavit against Mehmood/Awan's wife, Uzma Amin, as well as Maheshwari's wife, Shelly Maheshwari. Neither of those individuals are named as specific parties in this action, although the caption of the action concludes with the phrase "AND OTHERS."

Agent Baren's affidavit states that a search of corporate records for WWSS indicated that Uzma Amin is the president and registered agent, and that Shelly Maheshwari is a director. Maheshwari is shown as incorporator and chief executive officer of the corporation. At the same time, Fazal M. Awan is shown as the president of WWSS.

The affidavit also identifies results of information obtained by government agents during execution of search warrants issued against WWSS, Sana and New Age Technology, as well as interviews with employees of the corporations. As a result of those interviews on February 12, 2009, the government alleges that WWSS and Sana recruit laborers from foreign countries for work in the U.S. However, upon the arrival of those workers in the U.S., it is alleged that there is no job for those workers, and they are directed to find "a job on their own." It is further alleged that Mehmood/Awan and Maheshwari charged the foreign workers for expenses to obtain visas, and to travel to the United States.

Agent Baren's affidavit alleges that Mehmood/Awan and Maheshwari falsified labor certification documents and immigration documents for foreign workers by alleging that jobs were available for those individuals in the United States when they were not.   The government contends that defendants have committed fraud, and through that fraud have accumulated substantial assets.

The affidavit also identifies specific assets, including but not limited to accounts located in the Clinton National Bank, Clinton, Iowa, and including Certificates of Deposit held by Maheshwari, by Maheshwari and his wife; Sana Systems; WWSS; Uzma Amin; Worldwide Investment Co., L.L.C.; as well as accounts at the First Gateway Credit Union, Clinton, Iowa; U.S. Bank; Members Choice Community Credit Union, Clinton, Iowa; American Bank & Trust Company; and Wells Fargo Bank.

The parties have estimated that the assets currently restrained by the TRO total in excess of $1.8 million.

<u>THE EVIDENCE</u>

The Court incorporates the affidavits attached to the criminal complaints and the affidavit attached to the Ex Parte Application for Preindictment Temporary Restraining Order in this recitation of facts.

The following is a synopsis of the evidence presented to the Court on the issues in this case during the March 6, 2009 hearing:

I..   Evidence presented by the government:

A.  Witnesses:

1.  Eric Spalding.   He is a special agent with ICE.   He has held that position since 1996.   He is familiar with the H-1B visa, a non-immigration visa for specialty workers who

are brought into the United States to perform specific jobs for a limited period of time.    The

employer seeking an H-1B employee is required to affirm that no United States citizens can be

located who can perform that job at that salary level at a specific location.    If the application is

approved, then the potential worker is required to go through an I-129 application and interview

process in the worker's home country.

The employee must remain in that specific job at the specific location unless the

employer amends the I-129/H-1B status.  If the employee is no longer working at the job, identified

in the original application, the employer is required to notify the Immigration and Naturalization

Service, and to make funds available for the worker to return to his or her home country.

Agent Spalding also testified that Mehmood/Awan applied for two social security

numbers.   He further stated that when Mehmood was identified as a corporate officer or an agent

of a corporation, he used the last name of Awan or Mehmood Awan.    On the other hand, if

Mehmood was identified as an employee of a corporation, he was then known a Fazal Mehmood.

In 1996, Mehmood was listed as H-1B holder for Applied Computer Technology

(ACT), and identified as a computer technician.    In that job under that status, according to Agent

Spalding, Mehmood was only allowed to receive income from ACT.    He was precluded from

owning his own business in the United States.    That job was located in Texas.

Agent Spalding testified that in approximately 1996, Vineet Maheshwari was a

student at Maharishi University in Fairfield, Iowa, in the masters of business administration (MBA)

program.   He was in this country on a J-1 visa, which required a return to his native country at the

conclusion of his studies.    That same year, Maheshwari applied for an H-1B status to work for

Sana, but was ineligible because of his J-1 status.  Maheshwari returned to India, and was permitted

to return to the United States in 1997 under the H-1B program because he was provided a job with Sana as a market analyst in Clinton, Iowa at a salary of $28,000 a year.   In the application for that job, according to Agent Spalding, Fazal Awan was listed as Sana's principal.

Agent Spalding also testified that during the searches executed by federal agents of the homes and businesses involved in this matter, certain receipts for  Articles of Incorporation for WWSS were found (Exhibit 4), indicating that Maheshwari was an incorporator of that corporation, and that he signed the Articles of Incorporation.    Agent Spalding added that he could find no permission from the Immigration and Naturalization Service that would have approved Maheshwari to incorporate a business in the United States.

Also during those searches, an electronic copy of the Labor Condition Applications (LCA) applied for by WWSS were found.    According to Agent Spalding, the documents located identified 435 actual filings involving multiple people applying to fill multiple jobs.   This printout was dated January 18, 2002.   He noted that in a portion of this printout, it revealed that nine applications for programmer application analyst were applied for on the same day with each application requesting ten jobs.

In addition, Agent Spalding testified that on March 1, 2007, WWSS claimed that it had 90 positions available in Clinton at a salary of $44,055 per year.   The agent noted that during his visit to the offices of WWSS, he estimated that it comprised approximately  2,000 square feet, and he did not believe it could hold 90 people.

Agent Spalding also testified regarding Network Resource Group, which is an Illinois corporation.   He noted that the corporation had filed an H-1B petition on behalf of Maheshwari, and may have possibly filed a similar request on behalf of Mehmood.

In regard to Network Resource Group (NRG), Agent Spalding added that during the search, a Joint Venture Agreement (Exhibit 10) was located, which would have established a working arrangement between WWSS and NRG.   He testified that the Joint Venture Agreement was signed by both Mehmood and Maheshwari.   Again, he noted under the terms of their current status in the United States, neither would be permitted to own or enter into joint ventures on behalf of separate corporations.

According to interviews conducted by investigators in this case, including Agent Spalding, certain H-1B employees of both WWSS and Sana claimed that they had been charged fees by WWSS and Sana for applications to be qualified under the H-1B plan.   Agent Spalding testified that it is illegal for an employer to charge fees to an employee to file an I-129 application, or any applications under the H-1B program.

Agent Spalding stated that during a search of Maheshwari's house, certain non-immigrant visa applications, and in particular VS157 and VS156 forms (Exhibit 25), were found, and those documents indicated that Maheshwari claimed to be employed by NRG in Illinois.   Those forms were signed in June of 2002.

Agents interviewed the Officer Manager at WWSS, Micki Keester, during the search warrant executions.  She advised the agents that she had been employed at WWSS for approximately two years.   During that time she advised the agents that she observed H-1B workers come to the WWSS offices to use computers within the office to try to find jobs.   Agent Spalding testified that if her statements were true, it would be a violation of the H-1B program.

In addition, a former WWSS office manager, identified only as Melanie, was also interviewed.   She claimed to have arrived in Clinton on the H-1B program, identified as a computer

professional.   However, regardless of her status, she was ordered to work by Mehmood and/or Maheshwari as a receptionist in the WWSS Clinton offices.   She told the agents she then found other employment in New York state, consistent with the H-1B status, and she moved.

Mehmood/Awan's brother also apparently works for WWSS, and during the execution of search warrants he advised agents, according to Agent Spalding, that he had helped H-1B workers find jobs when they arrived in Clinton.

According to Agent Spalding's testimony, another former employee of WWSS, Muhammad Ali Malik was the subject of an I-129 form in July 2000.   Allegedly Sana brought him to Clinton, Iowa from his native Pakistan at a claimed salary of $28,000, for a job as a programmer analyst.   The H-1B visa was granted for a three-year period based upon proffered reasons of Sana and Awan.   In addition, Sana apparently extended Malik's period of authorized stay in employment in 2003, claiming that his new salary was $30,000.   It was alleged, according to Agent Spalding, that Malik would work only in Clinton, Iowa.

However, FBI and ICE agents interviewed Malik in Georgia in 2008, and learned that when he arrived in the United States he had no job waiting in Clinton, Iowa, and in 2002 he left for a job in California to work as a cashier at a gas station.   He left that job in 2003, and returned to Clinton to work at Sana for several months, but quit at the end of that year, and moved to Atlanta, Georgia to work again in a gas station.

Agent Spalding testified that Sana should have advised the INS when Malik left its employment on both occasions.   He could find no evidence that Sana had complied with that requirement.   He also testified that over 200 H-1B visas had been approved for WWSS, but in February 2009, agents found that only 2 were working in Clinton, Iowa.

On the other hand, Agent Spalding also testified that in reviewing the LCA applications that were located during the searches, at least five, but no more than 20 of the applications submitted by WWSS for the H-1B program had been denied.    He noted that approximately 200 had been approved for that status, and that it was his belief based on his investigation that all 200 who had been approved for the H-1B program through WWSS were illegally in the program.

He did, however, add that of the claimed 70 to 80 employees currently working at WWSS, he was not able to say that any of those were illegally in this country.

Agent Spalding also testified that while he has not found any evidence that Mehmood has attempted to leave the United States, and not return,  according to an LCA located during the searches, Mehmood was supposed to have been living in Texas.   No evidence that Mehmood had ever lived in  Texas has been located according to Agent Spalding.

The government also called as one of its witnesses Brian Berntsen, a Special Agent with the Internal Revenue Service (IRS), and assigned to its Criminal Investigation Division (CID). He has been a special agent with the IRS for 18 years.   He has been involved in the investigation in this case.    Much of Agent Berntsen's participation in this case has involved reviewing various records that have been made available to him through the IRS and/or the investigations conducted by representatives of other government agencies.

Among the documents reviewed were copies of wire transfers from Maheshwari and/or WWSS (Exhibit 15), six of which were to India, and to Shahana Software and Vishna Maheshwari.   The total was $31,620.

Other documents reviewed by Agent Berntsen included the following:

Canceled checks from WWSS to Network Resource Group signed by Maheshwari.

Canceled checks from WWSS to Mehmood, written on the Clinton National Bank. Berntsen testified that he reviewed tax returns from WWSS, and noted that Mehmood was listed an employee, but Awan was listed as an owner of WWSS, and provided a K-1 return.   Based on his evaluation, Agent Berntsen testified that Mehmood was a paid employee of the corporation.

Four canceled checks written on the WWSS account in 2005 and 2006, and which cleared foreign bank accounts in Pakistan exceeding $15,000, all signed by Maheshwari.

Documents related to the purchase of a condominium by Mehmood in Canada on October 30, 2001, which included a lease agreement between Mehmood and the Croatian Consulate in Canada, providing for a $22,000 a year rent payment.

With regard to that property, Agent Berntsen testified that he had reviewed evidence indicating that Mehmood had more than one bank account located in Canada.   Agent Berntsen also testified that he could find no record of Mehmood reporting ownership of any foreign bank accounts to the United States government or any of its agencies.

Agent Berntsen, on cross-examination, testified that Mehmood would be violating federal tax laws if he made filings under two separate entities; and he had found no indication that Mehmood was trying to resolve the issues raised by the use of the two names.

Agent Berntsen also testified that he found no evidence that Maheshwari and his wife had ever used more than one social security number.   He noted that his review of their tax returns indicated that they did report interest income, dividend and other required sources of income in their tax returns.   He found no evidence that they owned any foreign property.

B.  Exhibits.

Exhibit 1:   Printout/electronic copy of Labor Condition Applications (LCA) applied for by WWSS for 435 actual filings.

Exhibit 2:   Group exhibit.   Information relating to an application for a H-1B visa for Maheshwari to work for Sana.  The Sana Systems letter identifies Fazal Awan as president, and is dated February 25, 1997.

Exhibit 4: Articles of Incorporation for Worldwide Software Services, Inc., filed with the Iowa Secretary of State on  September 18, 1997, and indicating that the registered agent and the incorporator was Vineet Maheshwari, who was also a member of the initial Board of Directors along with Mehmood's late wife, Shahana T. Aleemuddin.

Exhibit 5: Answers to Interrogatories signed by Fazal Awan in a civil case entitled   "Fazal Mehmood Awan v. Pravin K. Tandlay, et al., Case No. LA29544" pending in the Iowa District Court for Clinton County.   In those Answers to Interrogatories, Mehmood identifies himself as Fazal Awan.  He also stated in those Answers to Interrogatories that WWSS "places consultants in private industry."   It also states in those answers that if an employee "had an H-1 status he could not work for WWSS."

Exhibit 7:   This is an index to a three-ring binder obtained by government agents during the search of the WWSS and Sana offices.   The index refers to a collection of LCAs regarding employees in different cities within the United States.

Exhibit 9:   Shareholder Operating Agreement, dated May 29, 1997, between Pravin K. Tandlay and Fazal Mehmood Awan regarding the operation of a business known as Computer Information Service, which was to be an Iowa corporation.   The agreement was signed by Tandlay and Fazal Awan.   This exhibit was found at the WWSS and/or Sana offices during the government search.

Exhibit 10:   Joint Venture Agreement dated January 15, 2001 between Network Resource Group, Inc. and  Worldwide Software Services, Inc.  Attached to that group document is a card bearing the signatures of Vineet Maheshwari and Fazal Awan for a commercial checking account opened in the name of Network Resource Group on January 18, 2002.

Exhibit 14:   Photocopies of official Indian governmental documents found in Maheshwari's home during searches.

-13-

Exhibit 15:   A computer printout of wired transfers of money from either Maheshwari and/or WWSS from Clinton, Iowa to New Deli, India, between July 11, 2000 and March 24, 2006, totaling $31,632.20.

Exhibit 16:   Group exhibit of five checks payable to Network Resource Group, Inc. from Worldwide Software Services, Inc., all signed by Maheshwari, and totaling $24,108 for the period between July 2005 and December 2005.

Exhibit 17:   Group exhibit of canceled checks from Worldwide Software Services, Inc. to Fazal Mehmood, ranging from as little as $4,310.37 for the pay period July 1, 2005 through July 31, 2005, to as much as $11,352.50 for the pay period November 1, 2005 through November 30, 2005.   The last pay period covered in this group exhibit is July 1, 2006 through July 31, 2006, showing an amount of $5,668.42.   All the canceled checks bear the endorsement of Fazal Mehmood.

Exhibit 18:   Group exhibit.   Two checks from Worldwide Services, Inc. to Shelly Maheshwari.   One for the pay period November 1, 2005 through November 30, 2005, in the amount of $19,337.50.   The other check is in the amount of $2,008.83 for the pay period June 1, 2006 through June 30, 2006. Both checks were signed by Vineet Maheshwari.

Exhibit 19:   Group exhibit of five checks written by Worldwide Software Services, Inc., to Uzma Amin, the wife of Fazal Mehmood/Fazal Awan, and signed by Vineet Maheshwari.   Two checks for the pay period November 1, 2005 through November 30, 2005, one totaling $2,005.83; the other totaling $19,337.50.   One check in the amount of $2,005.84 for the pay period September 1, 2005 through September 30, 2005; one check in the amount of $2,005.84 for the pay period October 1, 2005 through October 31, 2005; and one check in the amount of $6,018.51 for the pay period June 1, 2005 through August 31, 2005.

Exhibit 20:   Group exhibit regarding purchases of treasury bills and certificates of deposit by Worldwide Software Services, Inc. from Clinton National Bank on December 5 and December 6, 2005, totaling $149,591.67.

Exhibit 21:   Group exhibit of four checks written on the Worldwide Software Services, Inc. checking account with Clinton National Bank between August 18, 2005 and March 14, 2006, totaling $15,876.   Two checks were directed to payees in India; two checks were directed to payees in Pakistan.

Exhibit 22:   August 31, 2006 summary of account balances for Worldwide Software Services, Inc. with Clinton National Bank, indicating an ending balance in excess of $257,000.

Exhibit 23:    June 30, 2006 summary of account balances for Worldwide Software Services, Inc. with Clinton National Bank, indicating an ending balance in excess of $356,000.

Exhibit 24:   Group exhibit.   Two checks, one dated August 10, 2006, and one dated August 28, 2006, from Sana Systems, Inc. to Worldwide Software, signed by Vineet Maheshwari.   The checks are in excess of $108,000.

Exhibit 25:   Group exhibit representing a portion of a visa application package found in Maheshwari's house during the search by government agents.   Among the documents in this group exhibit is a letter dated May 10, 2002 from Network Resource Group, Inc., Springfield, Illinois, to the United States Department of State, advising that at that time Maheshwari was an employee of Network Resource Group, Inc. as a programmer analyst, and that Network Resource Group requested a multiple entry H-1 visa be issued to him, and a multiple entry H-4 visa be issued to his wife.

Exhibit 30:    Group exhibit, including documents related to a purchase of a condominium by Fazal Mehmood at 235 West Van Buren, Chicago, Illinois, for $338,800, as well as a purchase of a condominium at 25 Kingsbridge Garden Circle, Mississauga, Ontario, Canada, on October 30, 2001, in the amount of $317,500 (Canadian).    Also included in that group exhibit is a lease of that condominium in Canada to the Consulate of Croatian for a one-year term at $22,000 per year.

II.  Evidence Presented by Respondents/Interested Parties:

A.  Witnesses:  None.

B.  Exhibits:

Exhibit AA:   Deposit summary for Worldwide Software Services, Inc. dated February 17, 2009.

Exhibit BB:   Listing of employees of Worldwide Software Services, Inc. employees currently on its payroll.

Exhibit CC:  Clinton County, Iowa Real Estate Assessment Record for 258 Cragmore Drive, Clinton, Iowa for a residence owned by Uzma Amin, Mehmood's wife, indicating a valuation for land and improvements at $236,153.

Exhibit DD:  Group exhibit of personal photos of Mehmood and his family.

Exhibit FF:   Worldwide Software Services, Inc. Employee Earning Summary for February 2009.

Exhibit GG:   Letters of support for Defendant Fazal Mehmood.

Exhibit A:  Clinton County, Iowa Assessment Record for residence at 1001 Second Avenue North, Clinton, Iowa owned by Vineet and Shelly Maheshwari, indicating an assessment for land and improvements at $167,918.

## THE LAW

The TRO was issued pursuant to 21 U.S.C. § 853(e)(2) and (3).   That statute provides in pertinent part as follows:

**§ 853.   Criminal forfeitures.**

\* \* \*
\* \* \*
\* \* \*
\* \* \*

**(e)   Protective orders**

\* \* \*

**(2)**   A temporary restraining order under this subsection may be entered upon application of the United States without notice or opportunity for a hearing when an information or indictment has not yet been filed with respect to the property, if the United States demonstrates that there is probable cause to believe that the property with respect to which the order is sought would, in the event of a conviction, be subject to forfeiture under this section and that provision of notice will jeopardize the availability of the property for forfeiture.   Such a temporary order shall expire not more than ten days after the date on which it is entered, unless extended for good cause shown or unless the party against whom it is entered consents to an extension for a longer period.  A hearing requested concerning an order entered under this paragraph shall be held at the earliest possible time and prior to the expiration of the temporary order.

**(3)**   The court may receive and consider, at a hearing held pursuant to this subsection, evidence and information that would be inadmissible under the Federal Rules of Evidence.

In <u>U.S. v. Riley</u>, 78 F.3d 367 (8th Cir. 1996), the Court of Appeals was faced with an appeal involving not only preconviction restraints on a defendant's property, but also preconviction appointment of a receiver and a monitor regarding those assets.    The court held, 78 F.3d at 370:

> Preconviction restraints are extreme measures. Before a precon-
> viction restraint may  issue, the government must demonstrate at a
> hearing that the ... defendant is likely guilty, and that the property be
> restrained will be subject to criminal forfeiture.   (Citation omitted)
> And the preconviction restraint order should include specific findings
> permitting an appellate court to determine whether the property
> restrained is subject to forfeiture.   (Citation omitted)

It should be noted that in <u>Riley</u>, the underlying issues involved alleged RICO violations, unlike the allegations brought against Mehmood and Maheshwari in the related cases. And, in <u>Riley</u>, 78 F.3d at 370, the Court of Appeals criticized the government for never identifying the assets that were subject to forfeiture under the RICO statutes.

In another Eighth Circuit case, <u>United States of America v. Premises known as 3639-2nd Street, NE, Minneapolis, Minnesota, etc., et al.</u>, 869 F.2d 1093 (8th Cir. 1989), the court discussed preconviction restraint in a case involving alleged drug trafficking.   The court noted, <u>id.</u>, 869 F.2d at 1095 that

> In the instant case, it was incumbent upon the government to
> establish the presence of probable cause.   Probable cause in a
> forfeiture proceeding is "a reasonable ground for belief of guilt,
> supported by less than prima facie proof, but more than mere
> suspicion."   <u>United States v. One 1978 Chevrolet Impala</u>, 614 F.2d
> 983, 984 (5th Cir. 1980); *see also*, <u>United States v. One 1977 Lincoln
> Mark V. Coupe</u>, 643 F.2d 154, 156-57 (3d Cir. 1981), *cert. denied*,
> 454 U.S. 818, 102 S.Ct. 97, 70 L.Ed2d 88 (1981).   Once this initial
> showing has been made, the burden shifts to the party opposing
> forfeiture to demonstrate by a preponderance of the evidence that the
> property is not subject to forfeiture or that a defense to forfeiture is
> applicable.   <u>One Blue 1977 AMC Jeep CJ-5 v. United States</u>, 783
> F.2d 759, 761 (8th Cir. 1986).  If no such rebuttal is made, a showing
> of probable cause alone will support a judgment of forfeiture.   *Id.*

After detailing the bases for establishing probable cause in a preconviction forfeiture setting, the circuit court provided guidance to the district court regarding probable cause, U.S. v. Premises, 869 F.2d at 1097, noting:

> Probable cause must be judged not with clinical detachment, but with a common sense view to the realities of normal life.   United States v. Four Million, Two Hundred Fifty-Five Thousand, 762 F.2d 895, 904 (11th Cir. 1985), *cert. denied*, 474 U.S. 1056, 106 S.Ct. 795, 88 L.Ed.2d 772 (1986)....

A case more aligned with the issues in this case, and one upon which the interested parties, including Defendants Mehmood and Maheshwari, rely heavily in their arguments to this Court, is In re Restraint of Bowman Gaskins Financial Group, et al., 345 F.Supp.2d 613 (E.D. Va. 2004).   That case involved "ongoing visa fraud, money laundering and tax evasion investigation of an individual and a company he controls."   The government sought preindictment restraint of funds that the "targeted" company paid certain individuals.   The issues in Bowman somewhat mirror this case; they involve seizures pursuant to 21 U.S.C. § 853.

It has been well established that the government does have authority to seek to restrain certain assets in advance of indictment and conviction in order to ensure their availability during post-conviction criminal forfeiture proceedings.   United States v. Monsanto, 491 U.S. 600, 109 S.Ct. 2657, 105 L.Ed.2d 512 (1989).   Bowman  involves issues revolving around 18 U.S.C. § 1546, which is similar in scope to 18 U.S.C. § 1426, under which both Mehmood and Maheshwari have been charged in their separate indictments.

If a person is convicted of violating § 1546, then pursuant to 18 U.S.C. § 982, that defendant must forfeit to the government "proceeds" of the visa fraud; and any property "derived from or ... traceable to the proceeds" of visa fraud; and property used to "facilitate the crime."   As

noted in <u>Bowman</u>, 345 F.Supp.2d at 619-20, the analysis to determine what property is subject to preindictment restraint under § 853 is clearly explained.   Section 982 defines the scope of forfeitable assets in visa fraud cases, and incorporates § 853 to define that scope.   Three categories of assets are defined in § 853(b)(1) and (2) as:

> (i)   Any proceeds and property "derived from or ... traceable to the proceeds" of visa fraud;
>
> (ii)   Any property "used to facilitate the visa fraud;" and
>
> (iii)   Any substitute property, including otherwise legitimate assets, if assets subject to forfeiture under 18 U.S.C. § 982(a)(6)(A) (i) & (ii) above) are unavailable.

The court in <u>Bowman</u>, 345 F.Supp.2d at 620-21, f.n. 16 defined probable cause in forfeiture proceedings, stating

> FN 16.   It is settled that "[p]robable cause for the purpose of forfeiture proceedings is the same standard used in search and seizure cases," and requires a "practical, common-sense decision whether, given all the circumstances set forth ... there is a fair probability" that a crime has been committed or that property is subject to forfeiture. <u>United States v. Thomas</u>, 913 F.2d 1111, 1114 (4th Cir. 1990) (quoting <u>Illinois v. Gates</u>, 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)) (internal quotations omitted).

Notwithstanding the reliance upon <u>Bowman</u> by the interested parties in this case, that case specifically held that § 853(p) also provides for forfeiture of substitute assets when actual proceeds are unavailable because,  among other reasons described in § 853(p)(A)-(E), the proceeds have been "commingled with other property ... and cannot be divided without difficulty."   <u>Id</u>., 345 F.Supp.2d at 622.    In this case, the issue of substitute assets has been wholly ignored, or at the least, not discussed by the parties.

Some other discussions by the district court in <u>Bowman</u> deserve comment  here.

That court considered transfer of assets or property from a targeted company to third parties, and

what occurs when property may fail as a substitute asset.   Regarding those issues, the court stated,

<u>id</u>., 345 F.Supp.2d at 622-23, that

> ... As § 853(c) makes clear that title vests in the United States upon
> the commission of the crime and that funds cannot then be
> immunized from forfeiture by transfer to a third party.   *See*, 21
> U.S.C. § 853(c) (citation omitted)....
>
> Yet, even assuming, *arguendo*, that these assets are not subject to
> pretrial restraint as substitute property, the funds are nonetheless
> subject to forfeiture, and thus pretrial restraint, as property "used to
> facilitate" the visa fraud scheme. See, 18 U.S.C. § 982 (a) (6)(A)
> (ii)(II).   The ability to forfeit the assets of a business entity,
> legitimate and illegitimate, as property used to "facilitate" crime is
> well-established. (Footnote omitted)  Facilitation requires only that
> there be a "substantial connection between the property and the
> underlying criminal activity."  (Citations omitted)  Importantly, the
> property's role in the illegal conduct need not be "integral, essential
> or indispensable;" rather, "the term 'facilitate' implies that the
> property need only make the prohibited conduct 'less difficult or
> more or less free from obstruction or hindrance.'"  <u>Schifferli</u>, 895
> F.2d at 990 (quoting <u>United States v. Premises known as 3639-2nd</u>
> <u>Street, NE, Minneapolis, Minnesota, etc., et al.</u>, 869 F.2d 1093, 1095-
> 97 (8th Cir. 1989)).

The  issue about whether the preindictment restraint of assets violates the Sixth

Amendment rights of Defendants Mehmood and Maheshwari also deserves discussion here.   This

argument, as noted in <u>Bowman</u>, 345 F.Supp.2d at 627-28 has been considered and rejected by other

courts.   The the court in <u>Bowman</u>, <u>id</u>., stated

> Movants' final argument is that restraint of these funds deprives A of
> his Sixth Amendment right to counsel because A and his family
> intend to use the Bowman account funds to finance A's defense.
> The Supreme Court rejected this argument in <u>United States v.</u>
> <u>Monsanto</u>, 491 U.S. 600, 109 S.Ct. 2657, 105 L.Ed.2d 512 (1989),
> where it held that pretrial restraint of forfeitable assets does not

abridge the Sixth Amendment right to counsel if there is a finding of probable cause to believe the funds will be subject to forfeiture upon conviction.   (Citations omitted) ... The same reasoning applies here where there has been a finding of probable cause to believe that the Bowman account funds will be subject to forfeiture if A or Enterprise are convicted.

## DISCUSSION

The interested parties, and specifically Defendants Mehmood and Maheshwari, offered no witnesses to rebut the testimony of Special Agents Spalding and/or Special Agent Berntsen, or to challenge the statements made in the affidavit executed by Special Agent Baren in support of the preindictment restraint of the assets in question.

Unlike the matters raised in <u>Riley</u>, the government has not failed here to specifically identify the assets in question which are subject to the preindictment restraint.   On the contrary, the government has set forth in detail in its application and supporting affidavit all the various assets of the various entities sought to be restrained.

Even the testimony offered through Special Agent Spalding and Special Agent Berntsen was not severely challenged during cross-examination.    Those agents did not refuse to concede issues about which they had no information, or which they agreed were not supported by information gained through review of documents and/or the investigation as a whole.

Testimony from Special Agent Spalding established that the investigations of Defendants Mehmood and Maheshwari and their related enterprises span approximately five years.  Some suggestions were made by defendants during arguments  that given the length of this investigation there should be much more concrete evidence brought forward regarding the culpability of both Mehmood and Maheshwari.

While those suggestions have merit in the context of a criminal trial, they are not that meaningful to the Court at this stage of these proceedings.

The key here is probable cause.   The testimony of Special Agent Spalding and Special Agent Berntsen, in the opinion of this magistrate judge, did in fact establish that there is probable cause for the preindictment restraint of the assets identified in the government's application, and in District Judge John A. Jarvey's Temporary Restraining Order.

This magistrate judge follows the practical, common-sense determination regarding a finding of probable cause.   Bowman, 345 F.Supp.2d at 620-21; United States v. Thomas, 913 F.2d at 1114.

Using that common-sense approach, the testimony of both Special Agent Spalding and Special Agent Berntsen, when considered in light of the exhibits offered and admitted into evidence during the March 6, 2009 hearing, satisfies this magistrate judge that there is probable cause to believe that monies transferred from the enterprises to various personal accounts of Mehmood and his family, as well as Maheshwari and his family, in addition to funds sent abroad, were derived from or traceable to the alleged criminal activities underlying the criminal complaints and this forfeiture action.

The testimony of both agents shows the intertwining of WWSS and Sana, not to mention Network Resource Group.   The fact that both Uzma Amin, Mehmood's wife, and Shelly Maheshwari were paid as employees of some of the businesses, buttresses the findings here that there is probable cause to restrain these assets.

While the alleged social security violations charged in the criminal complaint against Mehmood do not necessarily figure into the alleged immigration violations, nonetheless, the fact that

testimony showed that Mehmood is listed as an employee of a corporation, and Awan listed as an owner of the corporation, further confirms the probable cause that there is some evidence that immigration laws have been violated.

There is no question that the immigration laws can be confusing and complex.  The H-1B visa program for skilled foreign workers seems to be a labyrinth of rules and regulations, and procedures that almost seem to beg violation.

The testimony of agents during the hearing established that, while questions still remain as to exactly which H-1B visas Mehmood and/or Maheshwari may have been utilizing at the time of their arrest, nonetheless it is without dispute that both of these individuals have engaged in the formation of, and operations of, domestic corporations in the United States, which actions are specifically prohibited by the H-1B visa program.

Thus, as the probable cause finding comes full circle, it appears that not only are there issues surrounding the over 200 H-1B visa applications submitted and approved for WWSS and/or Sana, but the fact that Mehmood and Maheshwari both utilized their H-1B status in the United States to start and operate separate businesses in violation of the immigration laws strengthens the government's case for the preindictment restraint of property.

While none of the parties have specifically discussed, or even argued, the issue of substitute assets, nonetheless this magistrate judge is satisfied that based upon a review of the government's exhibits admitted thus far, and the testimony of both Special Agent Spalding and Special Agent Berntsen, that many of the assets identified in the government's application, and set forth in Judge Jarvey's Temporary Restraining Order, would in fact qualify as substitute assets

should there be a conviction and post-conviction forfeiture actions instituted pursuant to 18 U.S.C. § 853(e)(2).

Even if some of the various business enterprises of Defendants Mehmood and/or Maheshwari, and the targets of the restraint of assets are determined to have been legitimate, the record before the Court now establishes sufficient evidence that WWSS and/or Sana  facilitated significant amounts of illegal activity.   In the context of the probable cause requirements, there is a "fair probability" to believe that crimes have been committed.

Once an initial showing of probable cause had been made by the government, the burden shifts to the party opposing forfeiture to demonstrate by a preponderance of the evidence that the property is not subject to forfeiture, or that the defense to forfeiture is applicable.  United States v. Premises, 869 F.2d at 1095.

Not only have the interested parties presented no testimony to rebut the evidence presented by the government through Special Agents Spalding and Berntsen, the arguments advanced at the conclusion of the evidence do not at all raise into question the issue of probable cause.

The exhibits offered by Defendants Mehmood and Maheshwari (Exhibits FF, GG, etc.) focus on issues of detention or bond, and not rebutting probable cause as to the restraint of assets.

Exhibit FF identifies the current employees of Worldwide Software Services, Inc., and indicates the gross wages to be paid those employees during any given monthly period.   The fact that evidence through government agents indicated that none of the current employees of WWSS would necessarily be considered to be in violation of any immigration laws does not rebut

probable cause, and does not rebut any presumptions regarding the assets that had been ordered restrained.

Likewise, Exhibit BB identifies 47 individuals who purportedly have some involvement with either Sana and/or WWSS, further listing, in some cases, their labor contract applications, and purporting to indicate the valid dates of those individual employment pursuant to the H-1B program.   While that document may well speak for itself, it does not in any way rebut the presumptions that have been established in this case.

Lastly, the fact that some of the restrained funds and/or assets may arguably have been targeted by the defendants and/or the other entities for the use in paying legal fees, those arguments are without merit at this juncture.   The Court has adequately discussed above the wholesale rejection of those theories as fully enunciated in United States v. Monsanto, 491 U.S. 600, 109 S.Ct. 2657, 105 L.Ed.2d 512 (1989).

On March 4, 2009, Defendant Mehmood filed a Motion to Terminate the Ten-Day Temporary Restraining Order (Clerk's No. 12).   The issues within that motion are fully considered in this Report and Recommendation and, therefore, that motion is denied.

For the legal and factual reasons set forth above in this Report and Recommendation, the undersigned magistrate judge recommends that pursuant to 18 United States Code § 853(e) an injunction be issued to preserve the availability of the property described in the government's Ex Parte Application for Preindictment Temporary Restraining Order with Supporting Suggestions (Clerk's No. 1), filed February 17, 2009.  Since indictments have been filed against both Mehmood and Maheshwari on March 12, 2009, it is further recommended that such injunction remain in force

until disposition of the underlying criminal cases: United States v. Mehmood, Case No. 3:09-CR-24, and United States v. Maheshwari, Case No. 3:09-CR-25.

Further, for the reasons set forth above, it is respectfully recommended that such injunction pursuant to 18 U.S.C. § 853(e)(1)(A), be issued as to all property identified in the government's application and regarding any claims to such restrained property by Fazal Mehmood, Fazal Awan, Fazal Mehmood Awan; Vineet Maheshwari; Shelly Maheshwari; Uzma Amin; Worldwide Software Services, Inc; Sana Systems, Inc.; New Age Technology and any other interested party.

The parties have to and including March 25, 2009  to file written objections to this Report and Recommendation, pursuant to 28 U.S.C. §636(b)(1), unless an extension of time for good cause is obtained.  Thompson v. Nix, 897 F.2d 356, 357 (8th Cir. 1990); Wade for Robinson v. Callahan, 976 F. Supp. 1269, 1276 (E.D. Mo. 1997).  Such extensions will be freely granted.  Any objections filed must identify the specific portions of the Report and Recommendation and relevant portions of the record to which the objections are made and must set forth the basis for such objections.  See, Fed. R. Civ. P. 72; Thompson, 897 F.2d at 357.  Failure to timely file objections may constitute a waiver of a party's right to appeal questions of fact.  Thomas v. Arn, 474 U.S. 140, 155 (1985); Griffini v. Mitchell, 31 F.3d 690, 692 (8th Cir. 1994); Halpin v. Shalala, 999 F.2d 342, 345 & n.1, 346 (8th Cir. 1993); Thompson, 897 F.2d at 357.

The Temporary Restraining Order shall remain in effect until there is an acceptance or rejection of this Report and Recommendation.

Date:   March 18, 2009                          Respectfully submitted,


                                    _____
                                    THOMAS J. SHIELDS
                                    CHIEF U.S. MAGISTRATE JUDGE